307 So.2d 689

**EMPLOYERS INSURANCE CO. OF ALABAMA, a corp.**

**v.**

**Warren LEWALLEN, Individually, et al.**

**SC 863.**

Supreme Court of Alabama.

Feb. 6, 1975.

Warren B. Lightfoot, Birmingham, for appellee William L. Hinds.

Louis A. Mezrano, Birmingham, for appellee John Huss.

Dunn, Porterfield, McDowell, Scholl & Clark, Birmingham, for appellant.

FAULKNER, Justice.

This case involves the scope of coverage under a standard workmen's compensation and employer's liability policy. On June 21, 1972, the appellant, Employers Insurance Co., issued a policy to "Warren Lewallen d/b/a Omar Construction Company." At that time, Omar was involved in the construction of the Nob Hill Apartments in Birmingham. At the same time, Lewallen was operating another company involved in the construction of the Vestavia Knolls Apartments. The latter company was Dome Construction Company and it had been formed specifically for the Vestavia Knolls project. Lewallen was the sole proprietor of both companies and exercised all organizational and supervisory powers. All of the employees worked for Lewallen, but for the purposes of accounting, the two companies were kept separate. Dome employees were paid through Dome, and

those working on the Nob Hill Apartments were paid through Omar.

In September, 1972, Lewallen decided to incorporate his entire construction business under the name of Dome Contracting Company, Inc. The appropriate papers were drafted and signed by the 29th of September, but the articles of incorporation were not filed in the office of the probate judge until October 25, 1972. At this time, Lewallen was not listed as an officer or director of the corporation. The stock was issued to the three incorporators, but all save for one share was immediately endorsed and delivered to Lewallen.

Appellee, John Huss, was first employed by Lewallen in 1971. He began working as a carpenter's assistant on the Nob Hill Apartment job, ostensibly as an employee of Omar. In July or August of 1972 Huss was transferred to the Vestavia Knolls site and received his pay through Dome. On October 12, 1972, Huss sustained an injury on the job which resulted in the loss of vision in one eye. Huss filed a workmen's compensation suit against the other appellees here. This suit was temporarily enjoined by an action for declaratory judgment brought by Employers. Employers denied any liability under their policy with Lewallen because of the fact Huss was not employed by Warren Lewallen d/b/a Omar Construction Co. when the injury occurred. This appeal followed a decree adverse to the insurance company rendered in the Circuit Court of the Tenth Judicial Circuit.

Employers argues 'that the crucial issue on this appeal is for whom was Huss working on the date of injury. If he was not then employed by Warren Lewallen d/b/a Omar Construction Co., the insurer contends that coverage was rightfully denied. It is pointed out that Huss was not working for Lewallen per se on the date of the injury, but for a de facto corporation or a partnership composed of Lewallen's attorney, accountant, and an employee of the accountant. This latter

position seems untenable since there was never any intention on the part of these individuals to form a partnership. In any event, we do not find the question of whether or not Huss was then employed by a de facto corporation named Dome Contracting Co., Inc. to be dispositive of the case.

According to testimony before the trial court, Lewallen informed Employers on a few occasions that he intended to incorporate and wanted to do what was necessary to provide continuing coverage. On one occasion he was told by the underwriter that all would be taken care of. Ostensibly this meant that a simple endorsement on the policy would solve the difficulty, because that was all that was ultimately done on November 3, 1972. Thus, there was notice to the company of the impending change of form, and no objection was entered. Through this entire period, Employers charged and collected premiums from Lewallen, based on the monthly size of his total payroll. These premiums were calculated from the payroll of Omar as well as Dome, and at all times pertinent, the pay of John Huss was used to arrive at the final figure. Yet now, Employers would argue that during this time they only intended to cover Omar employees, while all the time collecting premiums based on the salaries of Dome's workers additionally. As late as one month before the accident, September 14, 1972, Employers accepted payment of a premium written on the account of Dome Construction Co. (not the corporation). At one point Lewallen was told that the Huss injury would be compensated, but later the company reversed itself on this and said they would not admit liability because Huss was not working for Omar.

■ There is a general rule of estoppel extant in the field of insurance law. This rule prohibits an insurer in employer's liability, who collects premiums based upon a payroll listing, from denying liability as to an employee who was included therein.

See Couch on Insurance 2d, § 44:126 (1963 Ed.). In White v. Great American Insurance Co. of New York, 343 F.Supp. 1112 (M.D.Ala.1972) a federal district court held that an insurance company which had collected premiums on policies associated with workmen's compensation and general liability of an employer was in ". . . no position to deny its liability on both aspects of its insurance." In Moore v. Adams Electric Company, 264 N.C. 667, 142 S.E. 2d 659 (1965), an insurer tried to deny its liability because of a provision in the policy which stated that an assignment of the interest under the policy would not be binding on the company unless its endorsement appeared thereon. Mr. Adams sold his business to a corporate entity that he himself created. The North Carolina court concluded that this would not impose liability on the insurer for injuries sustained by the employees of the new corporation. However, the insurer had knowledge of the transfer and continued to charge and collect premiums from the corporation. This was considered as a waiver of any right to object to the assignment. The Oklahoma case of Young v. Holdenville, 384 P.2d 905 (Okl.1963) was even more explicit on this issue. There it was held that a city's compensation carrier was estopped from denying liability for injuries suffered by the city treasurer, if her salary was in fact included in the calculation of the premium. The case was remanded for such a determination in light of the fact she was an elected official. The situation is best stated by a quotation from Black v. Swetnick, 281 App.Div. 997, 120 N.Y.S.2d 663 (1953):

"The carrier must be deemed to have intended to insure the enterprise upon whose payroll the premium was based."

There was a good deal of testimony in this case over what transpired during meetings and conversations between Lewallen, the insurance company, its agents, and others. The trial court heard all of this evidence orally and found that Employers fully intended to extend coverage to Warren Lewallen and each of his business entities, without regard to formality. We find ourselves unable to disagree with this conclusion. It is a long standing rule in this jurisdiction that where the evidence is heard orally, the trial court's decree is clothed with a presumption of correctness and it will not be disturbed unless we find it plainly erroneous or manifestly unjust. Morris v. Morris, 290 Ala. 41, 273 So.2d 203 (1973). In light of this, and the fact that Employers collected premiums based in part upon Huss' monthly compensation, we are bound to conclude that the insurance company is estopped from denying its liability in this case. Courts of law have traditionally done what has been referred to as "piercing the corporate veil." The circuit court's final decree uses this terminology. This case is somewhat different in that Employers is trying to shroud Lewallen with a corporate veil in an effort to escape its possible liability. However, all of its actions belie that result.

Affirmed.

HEFLIN, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.