YATES, Judge.
The trial court divorced the parties in 1987, awarding to the mother custody of the parties’ daughter and ordering the father to pay child support. In 1990, because of the mother’s lack of employment, the parties agreed that the father would have custody of the daughter. The agreement was ratified by the court. In November 1996, the mother petitioned the juvenile court, alleging that the daughter was dependent and in need of care. The court, without giving notice to the father, entered an order awarding temporary custody to the mother. The father petitioned to remove the case to the circuit court; the petition was granted. The father answered the mother’s petition and counter-petitioned, seeking retroactive child support. In December 1996, the court entered an order, awarding the father certain visitation rights and ordering him to pay child support. Ore tenus proceedings were held in August 1997. Following those proceedings, the court entered an order, awarding custody to the mother and ordering the father to pay child support. The court stated that it was deviating from the Child Support Guidelines of Rule 32, Ala. R. Jud. Admin., “to offset the time that the father had custody, but received no support from the mother.” The father appeals.
The father initially asserts that the child is not, and was not, dependent at the time the mother filed her petition in the juvenile court.
Once the petition was removed to the circuit court, the case proceeded as a custody modification case, not as a dependency case. Therefore, the applicable standard of review for this case is the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). See C.P. v. M.K., 667 So.2d 1357 (Ala.Civ.App.1994).
When there is a prior custody judgment, the parent seeking a change in custody has a very heavy burden of proof. King v. King, 636 So.2d 1249 (Ala.Civ.App.1994). Merely showing a material change in circumstances is not sufficient. Although the best interests of the child are paramount, the petitioner must show that a change in custody will materially promote the child’s best *67 interests and that the benefits of the requested change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. The ore tenus rule applies, because the trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Ex parte Patronas, 693 So.2d 473 (Ala.1997). We are not allowed to reweigh the evidence and substitute our judgment for that of the trial court. Our review is limited to whether there is evidence to support the trial court’s judgment. Id.
In November 1996, the mother petitioned for custody of the daughter, because, she said, she felt that the daughter was not receiving adequate medical attention. ■ At that time, the daughter was infected with impetigo. The mother testified that the daughter had also suffered from lice and mite bites and that she did not know proper hygiene.
At the time of trial, the daughter was 11 years old. There was some controversy concerning her grades for the 1996-97 school year. The father testified that the daughter did well in the first grading period while she was living with him and that her grades had fallen after she went to live with her mother. Dr. Don Crook, the daughter’s psychotherapist, testified that the better grades during the first grading period could be attributed to the fact that the material was simply a review of the previous year’s material. After the mother received temporary custody in November 1996, she had the daughter tested for learning disabilities; she was subsequently diagnosed with attention deficit disorder. It was also discovered that she needed glasses. The mother testified that she worked with the daughter on her school work and that by the end of the year her grades had improved. The daughter ultimately received achievement awards for spelling and language.
A social worker with the Department of Human Resources testified that DHR had received reports of abuse of the child. She testified that a 1986 report of abuse against the father was “indicated,” that a 1988 report of neglect against the mother, for leaving the child at day care an extra hour, was “indicated,” and that a 1994 report of abuse against the father was “indicated.” She testified that DHR had determined that a 1997 report of abuse against the father was'not “indicated.” Concerning that episode, Dr. Crook testified that the daughter had told him that her father got angry, “took me by the collar and threw me across the room.” The social worker testified that none of the reports was sufficient to warrant removal of the daughter from the home.
Since 1990, the mother has graduated from college and has become employed as a paralegal. She is married to her third husband; there are no children born of that marriage. The mother testified that her husband and her daughter have a good relationship. There was testimony that the mother had overdosed on drugs twice. Dr. Crook explained that the overdosing had happened a long time ago and concerned other conflicts in her life. He emphasized that she was doing very well and that he felt that that was behind her.
At the time of the hearing, the father was living with his girlfriend, a child born of that union, and the girlfriend’s child from a previous marriage. He was still legally married to his second wife, but was seeking a divorce. The father testified that his employer is very liberal with his work hours and that his flexible hours allow him to participate in his daughter’s school and extracurricular activities.
Dr. Crook and the social worker testified that the daughter wished to live with her mother.
The trial court determined that a change in custody to the mother would materially promote the best interests of the daughter. The trial court did not make an express finding that the benefits of the change in custody would offset any disruptive effect caused by uprooting the daughter. Our review of the record, however, reveals no disruptive effect. There is evidence in the record to support the trial court’s finding. Ex parte Patronas, supra.
The father asserts that, pursuant to § 30-3-110 to -115, Ala.Code 1975, he is entitled to retroactive child support for the *68 years that he had custody of the daughter and did not receive support from the mother. He insists that the court erred in failing to grant him a “sum certain,” as provided in § 30-3-114. By Act No. 94-213, § 1, Ala. Acts 1994, codified at § 30-3-110, the legislature created “a civil action to establish an order of retroactive support which may be brought against a non-supporting parent who has a duty to support as the legal parent of a child or children but has failed to provide support.” The last sentence of § 30-3-110 states: “An action under this section can be brought only if support has not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.”
“Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). It is undisputed that the issue of child support was addressed in the judgment of divorce. Consequently, we conclude that the father is precluded from bringing an action pursuant to § 30-3-110.
In its order, the court specifically stated that it was deviating from the guidelines “to offset the time that the father had custody, but received no support from the mother.” The mother does not cross-appeal. Therefore, we do not address whether the deviation from the guidelines was proper.
The judgment of the trial court is affirmed.
The wife’s request for an attorney fee on appeal is denied.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ„ concur.